UNITED STATES of America ex rel.
Henry WILSON, Petitioner,

v.

Hon. J. Edwin LaVALLEE, Warden of Auburn State Prison, Auburn, New York, (Successor to Hon. Robert E. Murphy), Respondent.

Civ. No. 9557.

United States District Court
N. D. New York.

March 7, 1966.

Henry Wilson in pro. per., Dixon S. Welt, Albany, assigned counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Albany, N. Y., Frank S. Hogan, Dist. Atty., New York County, New York City, for respondent; Joseph R. Castellani, Asst. Atty. Gen., of counsel.

JAMES T. FOLEY, Chief Judge.

This habeas corpus proceeding is one of the substantial number in the steady flow into this Court from State prisoners that present complicated questions necessitating time-consuming processing, hearing and research for decision. This proceeding was carried to the Supreme Court by the State of New York after reversal and remand by the Court of Appeals, Second Circuit, of my dismissal of it by order dated June 11, 1963 in a combined petition for certiorari involving state prisoners Carafas and West with similar claims of unreasonable search and seizure. (United States ex rel. Wilson v. Murphy, 335 F.2d 550). The West remand is reported in United States ex rel. West v. LaVallee, 2 Cir., 335 F.2d 230. The remand in this proceeding was made with reference simply to the holding in United States ex rel. Carafas v. LaVallee,

2 Cir., 334 F.2d 331. Carafas directed findings of fact and conclusions of law by this Court on the unreasonable search and seizure issue. Certiorari was denied in the three proceedings. (LaVallee v. Carafas, 381 U.S. 951, 85 S.Ct. 1798, 14 L.Ed.2d 725).

The pertinent court history is that the petitioner was convicted after trial by jury in 1958 in the former Court of General Sessions, New York County, of feloniously possessing a narcotic drug with intent to sell. (Penal Law, McKinney's Consol.Laws, New York, c. 40, Section 1751). On November 10, 1959 he was sentenced as a fourth offender to a term of fifteen years to life. The conviction was affirmed, (People v. Wilson, 16 A.D.2d 207, 229 N.Y.S.2d 685, April, 1962), and leave to appeal to the Court of Appeals, New York, was denied. On this first go-around certiorari was denied at a time after the 1961 Mapp decision [Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081], with a record as complete as one could be on the search and seizure question again to be reviewed herein. (Wilson v. Murphy, 371 U.S. 852, 83 S.Ct. 94, 9 L.Ed.2d 87).

After the remand of the Second Circuit was in effect sustained by the second denial of certiorari, I issued a writ of habeas corpus for production of the petitioner, and assigned counsel. A hearing was held in Albany at which the petitioner only testified. District Attorney Hogan's office advised it was content to rest its opposition on the state trial record. Assistant Attorney General Castellani in person represented the State's interest at the hearing. We now have the state trial record which shall be referred to by folio number, and the hearing record before me. It is a duplicative effort, really, because the petitioner testified at the state trial at length, and the prosecution and defense attorneys, both experienced in the criminal law, developed in my judgment every possible circumstance relating to the arrest and search and seizure incident then. The testimony of the petitioner before me was a rehash of his previous testimony at the trial, with minor differences.

The essential basis for my denial in 1963 of the petition herein as expressly stated in my decision was the acceptance and reliance upon the writing of Justice McNally, of the New York Appellate Division, First Department, in 16 A.D.2d 207, 229 N.Y.S.2d 685: "No objection was made to the admission in evidence of the contraband." By that failure I followed the case law of New York and decisions of this District Court, unguided at that time by higher federal decisions, that the illegal search and seizure question was not preserved. I assume others accepted this unequivocal expression of failure to object as I did without further examination of the state trial record. However, I am quick to admit—it being strange and unexplainable—that my examination of the state trial record in depth now leaves no question in my mind that there was specific objection and exception to the offer and acceptance of the cocaine narcotics in evidence at the state trial. (Fols. 249, 315–316). Not only are objection and exception clear, but when the verdict was returned the petitioner's attorney, Mr. Brandenburg moved to set it aside on several stated grounds, among them the admission of improper evidence. (Fols. 1077–78; see Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408). Despite this new discovery, the rulings of the higher federal courts had to be awaited as to the retroactivity of Mapp and the consequence of failure to object. (Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Angelet v. Fay, 381 U.S. 654, 85 S.Ct. 1750, 14 L.Ed.2d 623; see also Nelson v. People of State of California, 9 Cir., 346 F.2d 73). Justice McNally, despite the statement that the question was not properly preserved by objection, did go on with a short outline of the facts and reference to case law to rule there was probable cause for the arrest, and therefore the search of the automobile and seizure of the narcotics therein was incident to a lawful arrest

294

and proper. (16 A.D.2d at p. 210, 229 N.Y.S.2d 685).

■ The task at hand, and it is burdensome, is to delve into the facts and circumstances disclosed by the accumulated records of two court systems and try to recapture the total atmosphere to determine whether there was an unreasonable search. United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L. Ed. 653. There has been continuous effort to clarify and distinguish the principles to be applied in automobile searches so there will be flexibility sensibly within the safeguards of the Fourth Amendment, framed when automobiles were not within human contemplation. The judicial purpose is to reach a balance in accord with modern reality and protect the needs of law-abiding society to investigate and uncover crime. (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L. Ed. 1879; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777). These are some of the noted cases on this perplexing subject, and the best that can be done is to apply their principles, mindful of the approved approach that in dealing with probable cause we deal always with probabilities and must search for the practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act. (Brinegar v. United States, supra, 338 U.S. p. 175, 69 S.Ct. 1302). The episodes involved here do not exceed a period of time from five to ten minutes, as agreed by everyone involved. It seems incredible so much judicial effort has been, is now required to be, and will still be expended to pierce satisfactorily and determine with finality the legal effect of these momentary human acts.

To narrate the events here, my analysis gives more credence to their detail as described by the detectives at the trial than to that of the petitioner at the trial and repeated before me at the habeas corpus hearing. The differences are not major, but are important enough in part to weigh them for credibility. The incidents evolved happened and were finished in a flash of time, but are tense and dramatic. They are good reminder that brave policemen endanger their lives routinely in the war against violent crime. A fair review of the factual background developed by experienced prosecution and defense attorneys is given comprehensively witness by witness in the State Judge's Charge. (Fols. 923 et seq.).

There were three detectives in a black detective squad car patrolling the streets of New York on May 4, 1957. At about 10:00 P.M. they received a radio call known as a "Signal 30", alerting them that a liquor store hold-up was in progress at Times Square. Detective Mc-Mahon, the one who is most important in the events that followed, testified the message said that the car involved was "a new automobile, a new model, possibly a Chevrolet. It was a two-tone, with a red bottom and cream top * * * traveling North on Central Park West * * ", and described one occupant as a male Negro. (Fols. 617–620). McMahon described the intercept of the Thunderbird, a two-seater, 1955 Sport car, with red bottom and white or cream top in which the petitioner was riding as a passenger at about 10:30 P.M. The car had Michigan license plates, and after the police car followed it for several blocks, when stopped with another car in front of it, the detectives, two of them, with drawn guns, went to the car crouching along each side and told the driver to pull over to the side of the street. McMahon testified the driver did not pull over exactly as ordered, but pulled around the corner past a fire hydrant, and stayed out and edged up the street a little. (Fols. 155–159). In this respect, Detective Catterson, walking along on the driver's side at the same time, with drawn gun, testified: "The car left me. We shouted at the car to stop or we would shoot, and followed it up." (Fol. 702).

The state trial record is replete with indication that these trained detectives were aware that the danger of being shot by an armed robber who might have been desperately trying to escape was a clear and present one. An example is Detective Catterson, on cross-examination, testifying: he "pointed his gun into the car * * * told them to keep hands in sight * * * pull car over to side". (Fols. 691–692). This detective was in a crouched position, bent over the low sports car, intently watching the hands of the occupants, particularly those of the passenger Wilson. (Fols. 694–702). Catterson said he saw a small package on the lap of Wilson as the car kept moving, and the inference is evident he feared a gun was in it. (Fols. 459, 713–714). It is evident to me throughout the record that in this fast-moving situation these courageous police officers feared the worst and thought they had apprehended the hold-up car. The petitioner Wilson testified at the trial and gave his version of the stopping incident. (Fols. 751–756). It is different in that he said Detective McMahon knocked on the car door on his side, which was locked, and said: "Pull around the corner".

Then critical and important events after the stopping of the car followed in a period of minutes. Two detectives ordered the occupants out of the car. McMahon ordered Wilson out his side. (Fol. 158). He then testified as Wilson stepped out of the car he, McMahon, noticed the package on the floor on his side, near his seat and the hump in the middle of the car, the package being the brown paper bag. (This brown paper bag, in my reading of narcotic cases and limited experience with them, seems to be the copyrighted method of transportation for narcotics). It was then, after the Detective gave Wilson a quick search that he says he bent down looking for a gun and he saw the bag or package. (Fols. 425–426). Then Detective McMahon looked in the bag and he asked Wilson whose stuff it was, and Wilson just shrugged his shoulders. The driver of the car, also interrogated, simply said:

"Ask Wilson". (Fols. 160–171). Wilson testified about this incident saying McMahon "patted" him after he stepped out, continuing: " * * * In the meantime he (McMahon) reached—he put his head in the car, * * * all I could see was his body stooped down in the car, and he snatched at something in the corner of the car * * * he missed it but he scraped it, and it fell in the street * * * he reached down and picked it up off the street and jammed it in his pocket." (Fols. 756–757). This version is not in accord with that of McMahon, which I accept. (Fols. 160, 245; 338–339; 391–393).

Of course, these facts and circumstances, the events of a few minutes, must be scrutinized to determine whether the legal standard of probable cause for arrest was reached that would support the undisputed on-the-scene immediate search. It is my judgment that the detectives, by the radio call, had reasonable, trustworthy information sufficient in itself to warrant a man of reasonable caution to the belief that this red and white Thunderbird was the one fleeing the robbery. (Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302; United States v. Juvelis, (D.C.N.J.), 194 F.Supp. 745). Surely, description and identification by hold-up victims or observers cannot be required to be 100% accurate. I think from the state and federal record the officers saw enough to permit them to believe the petitioner and the driver of the car had violated the law. (Henry v. United States, 361 U.S. 98, 102, 80 S. Ct. 168.) Every act of theirs shows firm belief they had apprehended gunmen. I also think an important factor to support probable cause in its illusory range was the conduct of the driver in not responding readily to the orders of the detectives. (See United States v. Moon, 2 Cir., 351 F.2d 464).

We may strangle law enforcement and court function if in these cases distinctions become too finespun and unreal. We can quibble forever as to when the arrest took place: at the stopping of the car, or the stepping out of the car at

the command of the detectives, or after the brown paper bag was found on the floor of the automobile. No matter, in my opinion, when the short time is considered in relation to any of these instances the conclusion is inescapable to me the search and seizure was contemporaneous, and if there was a few moments' span either way it is not an invalidating consequence. (Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Holt v. Simpson, 7 Cir., 340 F.2d 853; United States v. Boston, 2 Cir., 330 F. 2d 937, 939; United States v. Devenere, 2 Cir., 332 F.2d 160). It has been ruled recently in this Circuit that officers making a valid arrest of one or more occupants of an automobile can without a warrant *then and there* search the car. (United States v. Gorman & Roche, 2 Cir., 355 F.2d 151, 12/7/65, citing Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752). I find the search incident to a lawful arrest made with probable cause. The search was proper although it yielded contraband unrelated to the crime for which the arrest was made. (Harris v. United States, 331 U. S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Sorenson, 2 Cir., 330 F. 2d 1018; United States ex rel. Boucher v. Reincke, 2 Cir., 341 F.2d 977, 980; United States ex rel. Robinson v. Fay, (S.D.N.Y.), 239 F.Supp. 132). Finally, the arrest made without a warrant was in accord with and authorized by statutes of New York that did not violate the constitutional proscription against unreasonable search and seizure. (Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726; Code of Criminal Procedure, New York, Section 177(3); People v. Adorno, 37 Misc.2d 36, 234 N.Y.S.2d 674).

My findings of fact are contained herein. My conclusion of law based upon my evaluation in this turbulent field of law is that the search and seizure was made contemporaneous with an arrest that police officers in the front line of hazardous duty under emergency circumstances had probable cause to effect. Again, although I am content with my conclusion, in view of the uncertainties and to anticipate, I hereby issue a certificate of probable cause. (28 U.S.C.A. § 2253). A notice of appeal, if forwarded to the Clerk of this Court, Federal Building, Utica, N. Y., shall be filed by the Clerk without the payment of the required fee.

The petition is denied and dismissed for the second time. Attorney Dixon S. Welt, assigned counsel, has presented the cause of the petitioner with skill, briefed it thoroughly on the facts and law with apparent considerable research in a most difficult area of the criminal law. This Court is grateful for his help and his utmost willingness to accept this burden without compensation. The state trial record shall be returned to the Supreme Court of New York Law Library, 100 Centre Street, New York City. The entire application is directed to be filed without prepayment of fee, and it is

So ordered.