**UNITED STATES of America,
Appellant,**

v.

**Heinz WABNIK and Michael Sampayo,
Appellees.**

**No. 763, Docket 35801.**

United States Court of Appeals,
Second Circuit.

Argued April 29, 1971.

Decided June 8, 1971.

Before HAYS and FEINBERG, Circuit Judges, and BLUMENFELD,* District Judge.

David G. Trager, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E. D. N. Y., Thomas R. Pattison, Asst. U. S. Atty., on the brief), for appellant.

Maurice Brill, New York City, for appellee Wabnik.

Allan Kritz, New York City (Lifshutz & Kahn, New York City, on the brief), for appellee Sampayo.

HAYS, Circuit Judge:

■ This is an appeal from an order of the United States District Court for the Eastern District of New York suppressing evidence obtained as a result of a search of the defendant Wabnik's automobile. The United States appeals pursuant to 18 U.S.C. § 3731 (1964). We reverse the order below, since we find that the detectives who conducted the search of the automobile had probable cause to believe that a crime was being committed.

The relevant events took place on the evening of November 25, 1969. Officers Harz and Bichko, detectives of the New York Port Authority Police Department, were seated in an automobile in the BOAC parking lot at John F. Kennedy International Airport. Their assignment was to follow an employee of BOAC expected to appear shortly. Appellees drove into the BOAC parking lot in a black Comet at approximately 7:10 p. m. and parked about 20 feet away from the detectives. The latter noted that both men in the Comet were wearing white coveralls. Within a few minutes, a white Ford station wagon bearing Pan American insignia entered the lot and stopped directly behind the Comet. The appellees immediately got out of the Comet and, without a word, opened the right rear door of the station wagon, removed two cartons, and hurriedly placed them in the trunk of the Comet. The driver of the Pan American station wagon remained behind the wheel during the entire operation. Neither he nor appellees said anything at all.

After having observed these activities, the two detectives got out of their vehicle and headed toward the Comet. While they were approaching the Pan American station wagon backed out and drove away. The Comet had started to back up when it was stopped by Detective Harz. He showed his badge and asked the driver Wabnik to produce his license and registration. After inspecting these, Harz told Wabnik to open the trunk, and Wabnik complied. When the detectives found two cartons with Pan American airway bills attached, they placed the appellees under arrest.

In addition to the facts recited above, the court is entitled to consider other

---

* Of the United States District Court for the District of Connecticut, sitting by designation.

facts known to the detectives (Carroll v. United States, 267 U.S. 132, 159–160, 45 S.Ct. 280, 69 L.Ed. 543 (1925)) in deciding whether "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [stolen goods were] being transported in the automobile which they stopped and searched." *Id.* at 162. Both the detectives here were long experienced. Officer Harz had been a member of the New York Port Authority Department for over 16 years and had been on duty at J.F.K. airport for about 22 months. Officer Bichko had been with the Authority for 18 years and had been assigned to the airport for about 8 years. Both officers testified that they knew that Pan American cargo would not normally be handled or transferred except at Pan American's own facilities and indeed that they had never observed such a transfer as that involving appellees during the entire time they had been employed at the airport. That there was a more than adequate basis for the knowledge of the officers at the time of the seizure was confirmed by an official of Pan American who testified: that Pan American cargo is delivered to consignees only at the Pan American cargo building which has its own lot; that Pan American does not deliver; that Pan American station wagons are not used to move cargo; that Pan American employees may not use their own automobiles to transport Pan American cargo; and that if Pan American employees receive cargo personally, they are required to follow the same procedures as other consignees. He further pointed out that the BOAC parking lot is neither on nor near the direct route employed by Pan American cargo vehicles and stated that the BOAC parking lot is never used for authorized transfers of Pan American cargoes. In short, the events observed appeared to the detectives who were familiar with the procedures of cargo transfer at the airport to be highly unusual. Moreover, the detectives were aware of the well-known fact that many thefts of cargo had occurred at the airport.

When this background information is considered in conjunction with the facts observed, viz., the obviously prearranged manner of transferring the cartons hurriedly without conversation, the Pan American station wagon in the BOAC lot, the lack of documents, and the nighttime setting, it would be difficult to imagine an innocent explanation for the activity. The detectives were fully justified in believing that a crime was being committed before their eyes. Cf. Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

In determining whether there was probable cause for the action taken by the detectives, we are required to apply a common sense rather than a hypertechnical standard. United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The test is whether ordinary, reasonable men, possessed of the experience and knowledge of these detectives would conclude that the transaction described above was more likely than not a criminal transaction. See Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Since the detectives had probable cause to believe that a crime was being committed, they were not required to obtain a search warrant or to arrest the defendants before searching the automobile in which the stolen cargo was found. Carroll v. United States, *supra*; see Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967).

Reversed.