**UNITED STATES of America ex rel. Thomas MUNGO**

v.

**J. E. LaVALLEE, Superintendent of Clinton Correctional Facility.**

No. 73C395.

United States District Court, E. D. New York.

March 20, 1974.

McCarthy & Dorfman, Mineola, N. Y. by David W. McCarthy, Mineola, N. Y., for relator.

Louis J. Lefkowitz, Atty. Gen. of New York, by Burton Herman, Asst. Atty. Gen., for respondent.

## MEMORANDUM and ORDER

COSTANTINO, District Judge.

Thomas Mungo, presently confined at Clinton Correctional Facility, moves for a writ of habeas corpus under 28 U.S.C. § 2254 (1971), attacking a conviction for robbery, grand larceny and assault following a jury trial in Supreme Court, Kings County. Specifically he claims that the trial judge committed error by admitting testimony of an out-of-court identification which was the product of an impermissibly suggestive confrontation and by admitting into evidence items illegally seized from his automobile at the time of his arrest.

Prior to trial, relator was afforded a full evidentiary hearing on his motion to suppress the identification testimony and the items seized from the automobile. The facts adduced at the hearing can be summarized as follows. On January 3, 1967 Leonard Monteleone, then an employee of the New York Telephone Company, was collecting coins from pay telephones. At about 2:30 p. m. he proceeded to a factory located at 1301 Gravesend Road, Brooklyn, New York. Upon leaving the factory with two coin cannisters he pushed a door against a man standing ouside, whereupon he turned to the individual and excused him-

self. Before he reached his vehicle he observed that same person—later identified as Thomas Mungo—come up to his right and he felt something hard being placed into his side. He was told, "Don't say anything. Get into the truck." While entering the rear of the truck Monteleone turned his head and observed a second man follow behind him—this man was later identified as Robert D'Ambra. After being asked for his keys, he was bound by tape and made to lie face down on the floor of the truck. The vehicle was then driven away and shortly thereafter several coin cannisters were removed.

At the hearing Monteleone testified that he was able to see the face of each of the assailants for a few seconds. Moreover, on the day of the robbery he was able to give to the police a description of the clothing worn by the robbers, their race, approximate age and build. The following day he was able to assist a police artist in constructing a fairly accurate portrait of D'Ambra. He was unable to describe Mungo's facial characteristics, although he later testified that at the time he had a "picture of him in his mind."

Eleven days after the robbery Monteleone was summoned to the 62nd Precinct in Brooklyn "to see if he could identify two people." At the stationhouse he was requested to observe three men in a line-up—two of whom were white, D'Ambra and another man much heavier and older than him, and Mungo who was black. Initially Monteleone stated that though two of the men resembled the robbers he could not definitely identify them. The police then placed hats and other apparel on d'Ambra and Mungo. It is significant that the hats and apparel were similar to those which Monteleone had previously described as being worn by the robbers. An identification of Mungo and D'Ambra was then made. On later occasions Monteleone was unable to make a positive identification of either man. At both the hearing and trial he maintained that when he identified them he was certain that they were the men who had robbed him, but that since he had seen them several times thereafter he could no longer make an identification on the basis of his observations of January 3, 1967.

Minutes after the robbery Patrolman Edward Obarowski heard a bulletin over his police-car radio announcing that "in connection with a high-jacking of a United Parcel Service truck in the 66th Precinct, the perpetrators (three men) were supposedly leaving the scene in a 1966 Plymouth, color blue, registration 6Z 7514." The broadcast also reported that the truck had been left near 71st Street and Fort Hamilton Parkway. Shortly thereafter the patrolman observed a blue Plymouth sedan with three men inside and which bore the license plate numbers given in the bulletin. He pursued the vehicle and while it was stopped for a traffic light ordered the occupants out of the car. All three occupants were placed under arrest and a search was conducted of their persons and the automobile. Under the front seat of the car the patrolman found weapons and hats which were later identified by Monteleone and admitted into evidence against the defendants.

At the conclusion of the hearing the trial court denied the motions to suppress the identification testimony and the items seized by the arresting officer. Essentially the court held that despite the suggestiveness of the pretrial lineup, Monteleon's identification was reliable. The court's ruling was based upon Monteleone's opportunity to observe his assailants, the short interval between the robbery and the confrontation, the certainty expressed by the witness at that time, and the reasonably accurate description of the robbers given to the police—especially the police artist's drawing. The court made particular reference to the witness' honesty in admitting that after eleven months and after having seen the defendant on several occasions he could not be sure of his identification. With respect to the weapons and other items taken from the automo-

bile, the court held that their seizure was incident to a lawful arrest. The court found that the arresting officer had sufficient information to give rise to a reasonable belief that the occupants of the car had committed a felony and were in flight, which thereby justified the arrests and search of the vehicle.

■ Since the out-of-court identification occurred prior to the rulings in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), relator's due process claim is to be determined in accordance with the principles established in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and its progeny. In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) the Supreme Court restated the governing test as follows:

It is, first of all, apparent that the primary evil to be avoided is a "very substantial likelihood of irreparable misidentification." Simmons v. United States, supra, 390 U.S. [377], at 384 [88 S.Ct. 967, 19 L.Ed.2d 1247]. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process. . . .

*Id.* at 198, 93 S.Ct. at 381. The Court further held that mere proof of unnecessary suggestiveness did not require exclusion of evidence of an out-of-court identification. Rather the pivotal question to be resolved is

whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. . . .
[T]he factors to be considered in eval-

uating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199, 93 S.Ct. at 382. The record amply supports the state court's finding that the out-of-court identification was reliable. The witness clearly had a basis of recognition independent of the tainted confrontation. Neil v. Biggers, *supra*; United States ex rel. Phipps v. Follette, 428 F.2d 912 (2d Cir. 1970).

■ Turning to relator's claim that he was unlawfully arrested, the evidence proffered before the trial court supports its finding that the arresting officer had probable cause to believe that the occupants of the blue sedan had committed a felony. The events leading up to the arrest occurred within a short time of the robbery. The report that the perpetrators were fleeing in a blue sedan bearing a given license plate number was evidently made by a witness at the scene of the crime. When Patrolman Obarowski observed a car fitting that description immediate action was necessary. In such exigent circumstances the arrests were proper. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); United States v. Wabnik, 444 F.2d 203 (2d Cir. 1971). Moreover, the same circumstances which justified the arrests also furnished probable cause for the search of the automobile, Chambers v. Maroney, *supra* at 46–47, of 399 U.S., 90 S.Ct. 1975; or in the alternative the search was valid as an incident to the lawful arrest. Chambers v. Maroney, *supra*.

Accordingly, the application for a writ of habeas corpus is denied. 28 U.S.C.A. § 2254(d) (1971).