**William MAYER, Appellant,**

v.

**Julius MOEYKENS, Appellee.**

**No. 572, Docket 73–2473.**

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 1973.

Decided March 27, 1974.

Certiorari Denied May 28, 1974. See 94 S.Ct. 2633.

Henry Mark Holzer, Brooklyn, N. Y., for appellant.

Raymond L. Betts, Jr., Asst. Atty. Gen. (Kimberly B. Cheney, Atty. Gen. of Vermont, of counsel), for appellee.

Before FRIENDLY, HAYS and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from appellant's second habeas corpus petition filed in federal district court in connection with his state conviction for armed robbery for which he is currently serving a six- to ten-year term. His conviction was affirmed by the Vermont Supreme Court. State v. Mayer, 129 Vt. 564, 283 A.2d 863 (1971). His first habeas petition was denied by Judge Waterman, acting as district judge, Mayer v. Smith, Civ. No. 6464 (D.Vt. Sept. 15, 1972), and that decision was affirmed on appeal to this court by an order dated April 27, 1973. In the present appeal, appellant raises three new issues decided adversely to him in the court below: (1) whether his arrest was based on an arrest warrant unsupported by probable cause, and, if so, whether his conviction must be reversed; (2) whether appellant's due process rights under the fourteenth amendment were violated by Vermont's failure to accord him a "probable cause" hearing after his arrest, and, if so, whether such a violation requires reversal of his conviction; and (3) whether appellant's constitutional rights were violated by the requirements placed upon him by the Vermont "notice-of-alibi-defense" statute, 13 Vt.Stat.Ann. §§ 6561, 6562. We reject appellant's contentions.

Appellant's first and most substantial claim would, were we to accept appellant's phraseology, have us resolve the validity of his arrest and events subsequent thereto (i. e., the search of his motel room where a revolver was found) by looking to the sufficiency of the arrest warrant (or complaint) while ignoring the question whether the arresting officers, Police Chief James Mulcahy and Sergeants Gadhue and Bernard, had probable cause to arrest appellant irrespective of the existence of an invalid or a valid arrest warrant. As appellant incorrectly states the case from the outset, he was supposedly arrested "[o]n the strength of the warrant alone . . . ." Brief for Appellant at 4.

■■ On this basis, appellant argues that the case is controlled by Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), holding that an arrest warrant obtained by a sheriff based solely on a complaint and containing no statement of operative facts to show probable cause was insufficient, because it could not alone support the "independent judgment of a disinterested magistrate." 401 U.S. at 565, 91 S.Ct. at 1035. Judge Waterman held Whiteley inapplicable, first because it was decided after the arrest here and therefore did not, under, e. g., Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), have to be given retrospective application, and second because in Whiteley the warrant was issued on the basis of an "informal complaint drawn up by a county sheriff" while here it was issued on "an information presented by the deputy state's attorney, sworn to on his oath of office." [1] With all respect, we disagree. Whiteley, we feel, did not state law sufficiently novel in scope as to call for prospective application only. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The oath of office required of the Vermont state's attorneys (or their deputies) does not make the information any less conclusory than the sheriff's complaint in Whiteley, supra; in neither case is the magistrate to whom application is made enabled to make an independent judgment on

---

[1]. The Vermont state's attorney's oath required him not to swear to an information unless he believed probable cause existed to arrest and try the accused. In re Davis, 126 Vt. 142, 224 A.2d 905 (1966); State v. Donaldson, 101 Vt. 483, 486, 144 A. 684 (1929). The procedure of issuing a warrant on a state's attorney's information has now been changed to require the statement of a factual background to support the application for a warrant. Rule 4(a), Vt.Rules Crim.Proc. (eff. Oct. 1, 1973) (supplanting 13 Vt.Stat.Ann. § 5503). No. 118, Acts of 1973, §§ 26, 28.

whether the warrant should issue. It is that independent judgment which the cases require. *See* Giordenello v. United States, 357 U.S. at 486, 78 S.Ct. 1245. The magistrate, we were advised by United States v. Ventresca, 380 U.S. at 109, 85 S.Ct. at 746, is "to perform his detached function and not serve merely as a rubber stamp for the police."

■■ But this does not end the case, as appellant would have it. Concluding that the *warrant* was not supported by probable cause, the Court in *Whiteley* then proceeded to the next question, argued in the alternative by the State of Wyoming, whether the officer who actually effected the arrest in that case had independent knowledge sufficient to meet the probable cause burden exacted by the fourth amendment. The opinion of the Court, by entertaining this alternative ground advanced by the State to support the arrest, implicitly made the obvious point: the central determination in deciding whether an arrest is constitutionally valid is whether there was probable cause for that arrest. The *Whiteley* opinion makes it clear that probable cause may be shown either

through a properly executed arrest warrant or through the actual, as opposed to theoretical, knowledge of the arresting office prior to arrest. It goes without saying that *any* proper law enforcement officer in possession of a valid warrant may execute that warrant without having personal knowledge of the facts which support that warrant. It is equally clear that, in the absence of a valid warrant, personal knowledge of facts sufficient to sustain a valid warrant will sustain an arrest and subsequent search incident thereto by the officer possessing that knowledge. United States v. Hall, 348 F.2d 837, 841 (2d Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965).

■■ Here there is no claim by appellant that the arresting officers did not have probable cause to arrest appellant based on their own personal knowledge.[2] Were there such a claim, it would have to be presented first in any event to the state court under the familiar exhaustion of remedies rule applicable to this habeas corpus proceeding. 28 U.S.C. § 2254(b); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438

---

2. This may be because prior to appellant's arrest, the police had received a description of the perpetrator from the victim of the crime. The victim sometime later, although the transcript does not reveal when, selected from a group of 11 photographs two photographs of appellant as the perpetrator. The standards to guide a court in making the overall determination of probable cause in fact were said by Whiteley v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 1036, 28 L.Ed. 2d 306 (1971), to be "at least as stringent as the standards applied with respect to the magistrate's assessment." Although the *Whiteley* Court left open the possibility that the standards imposed upon the arresting officer might, in some circumstances, be *higher* than those imposed on a magistrate, it cannot be doubted that the actual identification of appellant by the victim through photographs goes beyond mere suspicion and would, in the language of Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (probable cause not found), be "sufficient to warrant a prudent man in believing that the [appellant] had committed . . . an offense." *See also* Brinegar v. United States, 338 U.S. 160, 175–176 (1949).

Appellant was registered under his own name at the Rest Haven Motel in South Burlington, Vermont, within a few miles of the scene of the crime. The photos identified were evidently known to the police to be of William Mayer. Apparently the police were informed that William Mayer was registered at the Rest Haven Motel; although the record does not make it explicit, it can be assumed that they were so informed prior to the arrest. We do not know whether the photos were shown to the victim as a consequence of that information or through some other circumstance—perhaps the victim's description. It also appears that at least two of the arresting officers had been informed personally by an employee of the motel at which appellant was arrested that she had found a holster in appellant's room—indeed, in the refrigerator in his room—on the day before appellant's arrest. The record makes it tolerably clear that this information came into the officers' possession prior to the arrest; as such it would be an additional factor lending weight to a finding of probable cause, although not enough alone to support it.

(1971). As *Picard* held, 404 U.S. at 278, 92 S.Ct. at 513, "the substance of a federal habeas corpus claim must first be presented to the state courts"; here the claim that the warrant was insufficient is different in substance from the claim that the arresting officers did not have probable cause to make the arrest. *Cf.* United States ex rel. Curtis v. Warden of Green Haven Prison, 463 F.2d 84, 86 (2d Cir. 1972).[3]

▪▪▪ Appellant's second point raised on appeal is that Vermont's "failure" to afford him a probable cause hearing prior to his incarceration amounted to a deprivation of due process of law that must be redressed by the reversal of his conviction. There may well be merit to appellant's argument, reasoning by analogy from the Supreme Court's decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that one accused of a crime is entitled, as a matter of constitutional law, to some kind of hearing prior to or soon after the State exercises its power of pretrial detention. The Vermont Supreme Court has itself recently denominated this right to a "probable-cause" hearing to be "fundamental," and it is not of little import that that court, in reaching its conclusion, stated at the outset that the "right" had been denied to someone "unable to raise bail" and who had therefore been "held in custody seven months pending trial." State v. Perry, 131 Vt. 75, 76, 300 A.2d 615, (1973). But the *Perry* decision looks to the question—we think correctly— whether a person may be deprived of his liberty without a prior hearing in terms of the fourth and fifth amendments, *not*

whether such a deprivation affects per se the fundamental fairness of legal proceedings that result from the charge against him. On these facts, there is no reason to believe that the trial of appellant was in *any* way affected by a denial to him of a "probable-cause" hearing. His present status is the result of his conviction under state law, not the result of his arrest or pretrial detention. Had he brought a habeas action in federal or state court to secure this "right" subsequent to his arrest and prior to conviction, his argument would be well supported by the decision in Brown v. Fauntleroy, 143 U.S.App.D.C. 116, 442 F.2d 838 (1971).[4] The problem we face here, unlike that faced by the *Brown* court, is that we have no power, in a postconviction habeas corpus action, to remedy, retrospectively, a possible denial of a "fundamental" right which has no bearing on appellant's present incarceration. Appellant argues that this "fundamental" right is meaningless unless enforced by reversal of his conviction; we do not agree. The remedy sought here by appellant, in effect release from prison, is one to be sought prior to conviction.

Appellant's final point, that his forced compliance with Vermont's notice-of-alibi statute absent any reciprocal discovery rules was violative of the Supreme Court's decision in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), was conceded at oral argument to have no merit in light of Vermont's exceptionally liberal criminal discovery rules in effect since 1961. 13 Vt.Stat.Ann. §§ 6721–6727, supplanted by Rules 15 and 16, Vt.Rules Crim.Proc. (eff. Oct. 1, 1973). *See* P. Langrock,

---

3. Since the exhaustion doctrine is a matter resting on comity and not a limitation on jurisdiction, absent very clear lack of merit, dismissal for want of exhaustion is without prejudice. Dirring v. Massachusetts, 459 F. 2d 953 (1st Cir. 1972).

4. In *Brown*, the petitioner had been placed in a state of "arrest" which he was permitted to challenge by a writ of mandamus even though he was not subjected to actual detention. Had appellant here raised his claim

during his detention, habeas corpus jurisdiction would certainly lie under 28 U.S.C. § 2241(c)(3), as he would not be seeking "to litigate a federal defense to a criminal charge, but only to demand enforcement of the [State of Vermont's] affirmative constitutional obligation [to grant him a hearing prior to his pre-trial detention]." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489–490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973) (speedy trial right).

Vermont's Experiment in Criminal Discovery, 53 A.B.A.J. 732 (Aug. 1967).

For the reasons herein stated, the judgment of the district court is affirmed.