UNITED STATES ex rel. Thomas MUNGO, Petitioner-Appellant,

v.

J. Edwin LaVALLEE, Superintendent, Clinton Correctional Facility, Respondent-Appellee.

No. 973, Docket 75–2019.

United States Court of Appeals, Second Circuit.

Argued April 30, 1975.

Decided July 15, 1975.

212

David W. McCarthy, McCarthy, Dorfman & Brenner, Mineola, N. Y., for petitioner-appellant.

Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, on the brief; Burton Herman, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before MOORE and MANSFIELD, Circuit Judges, and HOLDEN, District Judge.*

HOLDEN, District Judge:

This is an appeal from the denial of the appellant's application for a writ of habeas corpus by the United States District Court for the Eastern District of New York, Mark A. Costantino, *J.* The decision is reported in 372 F.Supp. 742 (E.D.N.Y.1974). The application attacks two judgments of conviction entered in

* Of the United States District Court for the District of Vermont, sitting by designation.

the Supreme Court of the State of New York following separate jury trials.

On February 28, 1968, the petitioner was sentenced after his conviction for robbery, grand larceny and assault. The conviction was affirmed by the Appellate Division, Second Department, 34 A.D.2d 736, 311 N.Y.S.2d 965; leave to appeal to the New York Court of Appeals was denied July 1, 1970. On March 5, 1968, the appellant was sentenced on his conviction of illegal possession of two weapons, a revolver and a pistol. The second conviction was affirmed without opinion in the Appellate Division, 34 A.D.2d 616, 310 N.Y.S.2d 665 and by the Court of Appeals, 28 N.Y.2d 540, 319 N.Y.S.2d 441, 268 N.E.2d 123 (without opinion).[1] Thus, all state remedies had been exhausted by the petitioner prior to filing the petition before us.

Notice of appeal from its denial was filed on July 16, 1974. Application to a different panel for a certificate of probable cause was denied August 16, 1974. On motion for reconsideration, a certificate of probable cause was granted and counsel assigned to prosecute this appeal.

The appellant was arrested and taken into custody on January 14, 1967, by Patrolman Edward Obarowski, New York City Police Department, assisted by Sergeant Linanne, following a police radio communication that originated from an unknown source. The subject of the radio communication concerns an episode that is unrelated to the offenses that resulted in the state convictions under attack in the present habeas corpus proceedings.

The police broadcast reported the theft of a United Parcel Service truck in the sixty-sixth precinct. A subsequent bulletin reported the vehicle was recovered unoccupied at 875 71st Street. This was followed by a broadcast which stated: "Perpetrators escaped in 6Z7154 New York, blue, four door vehicle, '66 Plym-

outh." Shortly after Officer Obarowski heard the bulletin, he observed a blue Plymouth sedan with three male occupants, bearing the license plate number 6Z7514. The police officer pursued the vehicle and overtook it while it was halted at a traffic light. He ordered the occupants to vacate the vehicle and immediately placed the black operator and his two white passengers under arrest. The appellant had occupied the driver's seat; one D'Ambra and a third person, identified as Walter Johnson, were the passengers. A search of the persons and the vehicle was conducted. The arresting officer probed with his hand the area underneath the driver's seat and found a revolver. Under the seat on the passenger side another weapon was found. Both guns were loaded.

The police officer removed the three subjects to the sixty-second precinct station. There, on further search, two keys were found in D'Ambra's pocket. A gray fedora hat and a second hat were found in the vehicle. These items of personal property were received in evidence during the state prosecutions of the appellant Mungo and his co-defendant D'Ambra for the robbery of one Leonard Monteleone, a New York Telephone Company employee, on January 3, 1967. The guns that were seized were used in the trial of the appellant and D'Ambra on the indictment which charged illegal possession of these weapons.

On January 3, 1967, Monteleone had collected money from pay telephones in a factory located at 1301 Gravesend Neck Road. As Monteleone departed from the factory he was confronted by a Negro and a white person who ordered him into the telephone truck. He was ordered to lie down, his hands bound and the money he had collected was stolen, together with the keys he had used to gain access to the coin boxes. The keys found in D'Ambra's pocket on January 14 were

---

1. The appellant was sentenced to concurrent terms of 15 to 20 years on the robbery count, 5 to 20 years on the larceny count and 2½ to 10 years on the assault count. The appellant was sentenced for illegal possession to a term of 3 to 14 years, concurrent with the terms of confinement previously imposed.

identified at the state trial as the keys taken from Monteleone in the robbery of January third. The two hats taken from the vehicle were placed on Mungo and D'Ambra to aid in Monteleone's identification of the accused. The property seized at the time of the arrests was received in evidence over the appellant's unsuccessful motion to suppress.

■ The appellant challenges both state convictions· on the basis that his arrest and the subsequent search of his vehicle were made without probable cause. The robbery conviction is attacked on the ground the station house identification by the complaining witness Monteleone was impermissibly suggestive and the product of the use of property unlawfully seized. We sustain the appellant's contention that the arrest and search by Officer Obarowski were accomplished without probable cause.

The source of the information contained in the police radio communication, which led to the appellant's arrest, remains unknown. In rejecting this aspect of the appellant's claim, Judge Costantino concluded—"(T)he report that the perpetrators were fleeing in a blue sedan bearing a given license plate number was evidently made by a witness at the scene of the crime." The record yields nothing to identify who made the report, —much less the presence of any competent person who observed the theft of the United Parcel Service truck.

■ The radio bulletin was certainly sufficient to move Officer Obarowski to halt the vehicle in that it carried substantially the same registration number and corresponded to the description given in the police broadcast. While a police radio bulletin may justify immediate investigation, it does not establish probable cause for an arrest and search unless founded on information adequate to support a judicial determination of probable cause. *Whiteley v. Warden of Wyoming*

*Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).[2]

In *Whiteley* the radio bulletin was broadcast on the strength of a warrant that issued without probable cause.

Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest. *Id.*

■ That situation prevails here. When the validity of the appellant's arrest was challenged by the appellant's pretrial motion to suppress, the prosecution was called upon to establish there was probable cause for the arrest of the appellant. *See People v. Baldwin,* 25 N.Y.2d 66, 70, 302 N.Y.S.2d 571, 250 N.E.2d 62 (1970).

■ Since the arrest in the instant case was made without a warrant, we are confronted with the second question presented in *Whiteley:* whether Officer Obarowski, in arresting Mungo, had independent knowledge sufficient to constitute probable cause within the demands of the Fourth Amendment. Absent a valid warrant, the arresting officer's personal knowledge of facts, sufficient to support a proper magistrate's warrant, will justify an arrest and search incident to the arrest. *Mayer v. Moeykens,* 494 F.2d 855, 858 (2d Cir. 1974); *United States v. Hall,* 348 F.2d 837, 841 (2d Cir.), *cert. denied,* 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965).

■ The total facts within Officer Obarowski's knowledge at the time he effected Mungo's arrest were those reported in the police radio bulletins.[3] The

**2.** Although the appellant's state trials preceded *Whiteley v. Warden,* the Supreme Court's decision is applied retrospectively in this Circuit. *Mayer v. Moeykens,* 494 F.2d 855, 858 (2d Cir. 1974).

**3.** The radio messages broadcast were as follows:

9:38 a. m. January 14, 1967. From the 66th Precinct, Sergeant Caruso. Received by Pa-

source of the information was unknown at the time of the arrest; it remained unknown at the time of the pretrial suppression motion.[4] The facts which inspired the radio bulletin were not disclosed in the record of the state proceedings, nor have they been advanced in the present collateral federal action.

In denying the appellant's application Judge Costantino placed principal reliance on *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) to conclude that " . . . the evidence proffered before the trial court supports its finding that the arresting officer had probable cause to believe that the occupants of the blue sedan had committed a felony. The events leading up to the arrest occurred within a short time of the robbery. The report that the perpetrators were fleeing in a blue sedan bearing a given license plate number was evidently made by a witness at the scene of the crime. When Patrolman Obarowski observed a car fitting the description immediate action was necessary. In such exigent circumstances the arrests were proper. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Wabnik*, 444 F.2d 203 (2d Cir. 1971). Moreover, the same circumstances which justified the arrests also furnished probable cause for the search of the automobile, *Chambers v. Maroney, supra* at 46–47, 90 S.Ct. 1975; or in the alternative the search was valid as an incident to the lawful arrest. *Chambers v. Maroney, supra*."

■ The trial court's conclusion, that the report (to the police) was evidently

---

trolman Reilly. 68th Street and Fort Hamilton Parkway. See complainant re: possible larceny of truck. Sergeant Caruso requested car 66G, which is unavailable and call was given 66D.

\* \* \* \* \* \*

On the rear of the same slip, time stamped 9:56 a. m., January 14, 1967, 7416 United Parcel truck taken in front of 825—71st Street. Received from car 64G, designation 2053, at 10:34.

\* \* \* \* \* \*

Time stamp 10:08 a. m., January 14, '67. From 66th Precinct, Sergeant Caruso. United Parcel truck, dark brown 1939 rocket, New York 145749 commercial. On the side truck number 7146, stolen from 68th Street and Fort Hamilton Parkway. Direction unknown. Transmitted by radio by operator number 37, Patrolman James McGovern.

\* \* \* \* \* \*

10:10 a. m., January 14, '67. R.N.P. 64G. Recovered at 825—71st Street unoccupied.

\* \* \* \* \* \*

10:13 a. m., January 14, 1967, from car 64A. Perpetrators escaped in 6Z 7154 New York, blue, four door vehicle, '66 Plymouth. Received by Patrolman James McGovern, assigned to radio.

\* \* \* \* \* \*

10:21 a. m., January 14, '67. Indication '66 Plymouth by operator number 27, Frank Mollo.

\* \* \* \* \* \*

10:35 a. m., January 14, 1967. From R.M.P. 62, Sergeant number 2. Indicates 62B is also on scene. West 8th Street and Avenue U holding occupants of 6Z 7154. Received by operator number 37, Patrolman James McGovern.

\* \* \* \* \* \*

At 10:35 a. m., January 14, '67; 66 detectives, 64 detectives notified. 10:53 a. m., January 14, '67, signal 10383.

4. Officer Obarowski testified at the suppression hearing:

Q. Officer, in the same paragraph where you have the license plate listed in the complaint I call your attention to the first sentence wherein you state, "A call was made to the 64th Precinct by an unknown person." Is that right?

A. Yes.

Q. So that who originated the call you don't know?

A. No, I don't.

Q. Did you ever learn his identity?

A. No.

Q. Officer, eventually when these defendants were booked in the 64th precinct—withdrawn. In what precinct were the defendants booked?

A. 62nd Precinct.

Q. Eventually when these defendants were booked in the 62nd Precinct they were only charged with crimes involving property that was removed from the automobile, or the persons as a result of the search; is that right?

A. Correct.

Mr. Kranz: I have no other questions at this time, your Honor.

made by a witness at the scene of the crime, is entirely unsupported by the record. Indeed, apart from the radio bulletin itself and its reference to a truck stolen from 68th Street and Fort Hamilton Parkway, there is nothing to establish that an actual theft had taken place.

In the presence of these shortages, it is clear the District Court's reliance on *Chambers v. Maroney* is misplaced. Mr. Justice White's opinion in *Chambers* stresses the point that the police acted on information supplied by the victim and two teen age observers at or near the scene of the crime. In reliance on this information, the Court held the police had ample cause to stop and arrest the occupants whose description, and that of their getaway car, fitted the identification provided by the eyewitnesses to the crime.

■ The state urges that there was probable cause for arresting the appellant since he fitted the description of a perpetrator as stated in a radio alarm. We are referred to *United States ex rel. Wilson v. LaVallee,* 251 F.Supp. 292, 296 (N.D.N.Y.1966), aff'd, 367 F.2d 351 (2d Cir. 1966) and *United States ex rel. Williams v. LaVallee,* 415 F.2d 643, 645 (2d Cir. 1969).

In the *Williams* case the contraband contained in the proverbial "brown paper bag" was discovered in plain view as the officers ordered the occupants from the vehicle that corresponded to the description given in the police bulletin. The vehicle was halted on the predictable escape route after it had failed to stop immediately as directed. The occupants of the Williams vehicle were observed to be armed as the officers approached the car. It is significant that before making the arrest, the officers requested addi-

tional identifying information concerning the subjects of the police alarm. The occupants met the description supplied in the second bulletin. Apart from these distinctions, both cases were decided without the benefit of the light of *Whiteley v. Warden, supra.*

As previously indicated, in the case at hand the information possessed by Officer Obarowski and the officer who accompanied him, consisted only of the data contained in the police bulletin, coupled with the fact that the vehicle substantially fitted the description given in the broadcast. These factors are fewer in number and less persuasive than those available to the arresting officer in *Whiteley,* which were held to be insufficient in substance to establish probable cause for a warrantless arrest.[5] The record is barren of any facts available to the police concerning the source of the complaint received by Patrolman Reilly at 9:30 "re possible larceny of truck." There is nothing to corroborate the information that the panel truck was actually stolen and that if there were such a theft, that it was probably committed by the occupants of the blue Plymouth which was seized and searched. Although the arresting officers acted with commendable dispatch and vigilance in response to the bulletin, the arrest was made without probable cause and invaded the appellant's constitutional rights under the Fourth and Fourteenth Amendments. And the evidence obtained as an incident to the arrest should have been suppressed and excluded. *Whiteley v. Warden of Wyoming State Penitentiary, supra,* 401 U.S. at 566–568, 91 S.Ct. 1031, 28 L.Ed.2d 306; *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The defendant seeks to rescue both the arrest and the search on the conten-

---

5. In *Whiteley* the information possessed by the Laramie police officer at the time of the arrest and search consisted of (1) the data contained in the police bulletin; (2) the knowledge obtained by personal observation, that the two men were driving a car matching the car described in the radio bulletins; (3) the knowledge possessed by one of the arresting officers, that one of the people in the car was Jack Daley; (4) the knowledge acquired by personal observation, that the other individuals in the car fitted the description of Whiteley contained in the police bulletin; and (5) the knowledge acquired by the officer after stopping Whiteley, that he had given a false name. 401 U.S. at 566, 567, 91 S.Ct. 1031.

tion that the radio bulletin justified the investigatory stop of the Mungo vehicle. It is argued that in the course of the investigation which followed, Officer Obarowski had authority to reach underneath the car seat to uncover the loaded weapons. This discovery supplied probable cause to make the arrest and search that followed, since there was no infringement on the right of privacy once the occupants had vacated the vehicle.

In urging this point, the appellee relies on *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Early in the opinion of the majority of the Court, Mr. Justice Blackmun carefully limits the scope of its teaching to the exterior of the vehicle and points out:

> This case is factually different from prior car search cases decided by this Court. The evidence with which we are concerned is not the product of a "search" that implicates traditional considerations of the owner's privacy interest. It consisted of paint scrapings from the exterior and an observation of the tread of a tire on an operative wheel. The issue, therefore, is whether the examination of an automobile's exterior upon probable cause invades a right to privacy which the interposition of a warrant requirement is meant to protect. This is an issue this Court has not previously addressed. *Id.* at 588, 94 S.Ct. at 2468.

The Court then went on to hold:

> In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed. Stated simply, the invasion of privacy, "if it can be said to exist, is abstract and theoretical." *Air Pollution Variance Board v. Western Alfalfa Corp.,* 416 U.S. 861, 865, 94 S.Ct. 2114, 2116, 40

L.Ed.2d 607 (1974). Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments.

■ We recognize that the constitutional demands for a permissible search of a mobile vehicle are less stringent than those which obtain in the search of private premises. *See Chambers v. Maroney, supra,* 399 U.S. at 48, 90 S.Ct. 1975. But the officers conducting the search must have reasonable or probable cause to believe they will find the instrumentality of a crime or evidence pertaining to a crime before the warrantless search is undertaken. *Dyke v. Taylor Implement Manufacturing Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). As we have seen, probable cause was not supplied to the investigating officers from the facts stated in the police broadcast. "(I)nsofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry." *Cardwell v. Lewis, supra,* 417 U.S. at 591, 94 S.Ct. at 2470. While the right to privacy does not protect the exterior of the vehicle, it does extend to a gun concealed under the seat of the vehicle. Since the evidence given at the suppression hearing was insufficient to justify the interior search of the vehicle, it should have been excluded at the trial. *Dyke v. Taylor Implement Manufacturing Co., supra,* at 221, 88 S.Ct. 1472.

The appellant's hat, taken in the course of the search of his automobile on January 14, 1967, served another purpose of the prosecution before trial. When the witness Monteleone was called to the precinct house to identify the appellant and D'Ambra, he viewed them along with a second white suspect, considerably older than either Mungo, who was black, or his co-defendant D'Ambra. Monteleone was unable to identify any of the suspects until the police placed hats on Mungo and D'Ambra. The hat placed on Mungo's head was taken from his vehicle at the time of his arrest.

The same considerations which prohibited the use of the products of the search as evidence, forbade its use in the police station identification.[6] "The exclusionary prohibition extends as well to the indirect as the direct products of such invasion." *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).[7]

Although written in a different factual context, the policy upon which the rule is founded was stated by Mr. Justice Holmes in *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920):

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.

*See United States v. Edmons,* 432 F.2d 577 (2d Cir. 1970).

This result makes it unnecessary to decide the appellant's remaining contention that the station house identification by the witness Monteleone was impermissibly suggestive and unreliable within the due process concept expressed in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The order of the District Court is reversed and the cause is remanded with direction to grant the appellant's application for a writ of habeas corpus unless the State of New York, within a reasonable time after the date of this mandate, takes proper steps to retry the appellant on such counts of the indictment as the people shall deem appropriate.

---

6. The testimony of Mr. Monteleone at the pretrial hearing on the defendant's motion to suppress the identification established that the utilization of the hats quickened his memory. Prior to their use, he had been unable to make a positive identification:

> A. First they were showed without the hats, and then with the hats.
> Q. All right. And isn't it a fact when you first saw them you said you weren't sure? What? Isn't that right?
> A. Yes . . ..
> Q. But you weren't sure when you first looked at them; isn't that right?
> A. Without the hats on.
> Q. And then they put hats on?
> A. Yes; and glasses.

> Q. Oh; he put glasses on them too?
> A. On the white fellow; the white fellow.
> Q. What kind of hats did he put on them?
> A. He put a gray fedora on the white defendant and a black sort of state trooper type hat on the Negro fellow; the Negro defendant . . . ..
> Q. Didn't you tell him you weren't sure of the Negro fellow?
> A. Before he—before the hat was put on him.
> Q. You said you weren't sure.
> A. Right.

7. The authority of *Wong Sun* has recently been reaffirmed by the U. S. Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).