**UNITED STATES of America**

v.

**Ronald George THOMPKINS and Henry Taylor, Defendants.**

**No. 75 Cr. 703.**

United States District Court, S. D. New York.

Nov. 17, 1975.

Thomas J. Cahill, U. S. Atty. for the Southern District of New York, New York City, Michael S. Devorkin, Asst. U. S. Atty., for plaintiff.

Joseph Stone, New York City, for defendant Ronald George Thompkins.

Selig Lenefsky, New York City, for defendant Henry Taylor.

MEMORANDUM

LASKER, District Judge.

Ronald George Thompkins and Henry Taylor are charged with conspiracy to rob a bank in violation of 18 U.S.C. § 371. They move to suppress an envelope inscribed with an incriminating message seized on the date of their arrest. The motion is granted.

I.

On July 10, 1975, three plain clothes officers of the New York City Police Department observed a man, later identified as Taylor, standing on the corner of 72nd Street and 1st Avenue looking across the street at a bank. Their suspicions aroused, the officers decided to keep Taylor under surveillance. (Tr. 5–6) Taylor crossed to the bank, looked in the window and entered, reappearing shortly in the comany of Thompkins. (Tr. 6–7) In the period which followed the officers observed the two men make similar approaches to two other banks in the vicinity, although neither actually entered the second or third bank. (Tr. 7–12)

After both suspects had approached the third bank and returned to their car the officers decided to close in. Sergeant Aitken and Officer Gleason approached either side of the vehicle from the rear, while Officer Maffia drove his car in front of the suspects', got out and approached the driver's side from the front. (Tr. 12–13; 20–21) All three officers had their guns drawn. (Tr. 32–33)

After Maffia approached the driver and asked for his license and registration, Thompkins and Taylor were ordered out of the car. (Tr. 20–21) A brief check of the registration, license plates and VIN number disclosed no irregularities. While the two suspects were standing on either side of the rear of the car with their hands on the vehicle under the watchful eye of Gleason and Aitken, Maffia reached inside the vehicle and turned off the ignition. (Tr. 20–22; 39–40) He noticed two suit jackets on the seat of the car and picked one of them up

"to know if there was any type of weapons in the jackets themselves or if the jackets were covering any weapons that would have been readily accessible to the defendants on the front seat of the auto." (Tr. 23)

He felt a hard object in the inside right pocket, opened the pocket with a finger and peered in. (Tr. 24; 41–42, 44–45) He saw that the hard object was a 5–7 inch "fro comb" and that the pocket also contained a plain white envelope. (Tr. 24–25; 42–43) He then removed both items to ensure himself they were all that the pocket contained. (Tr. 43–46) While removing the comb and envelope, the inside flap of the envelope was exposed and he saw the message written there: "My partner and I have a gun. Fill the envelope with large bills." (Tr. 24–25; 30)

## II.

■■ The government first contends that, based upon their observations of the defendants, the officers had probable cause to believe that the crime of conspiracy to rob a bank was being committed in their presence. Conspiracy by itself, however, in contrast to substantive crimes, see, e. g., *United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975) and *United States v. Wabnick*, 444 F. 2d 203 (2d Cir. 1971), is a crime peculiarly difficult to observe because of the near impossibility of "seeing" that the conspirators have—as they must to be in conspiracy—reached an agreement to commit a crime. While it is of course true that culpable mental states may sometimes be fairly induced from the observation of physical acts, when the only suspect activity observed is a conspiracy, a very strong showing is required to support the conclusion that probable cause has been established. We conclude that the information available to the officers as a result of their observations was not sufficient to raise their suspicions to the level of probable cause. We note that the observed behavior of Thompkins and Taylor in this case is very much like that of the defendant in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which no probable cause was found to exist. 392 U.S. at 7–8, 88 S.Ct. 1868.

■■ On the other hand, *Terry* does support the government's alternative claim here that the officers had at least enough information, and therefore the right to stop the suspects "for purposes of investigating possibly criminal behavior." *Terry v. Ohio, supra,* 392 U.S. at 22, 88 S.Ct. at 1880; *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The permissible scope of a search conducted pursuant to a *Terry* stop, however, is limited to what is reasonably necessary to allow the officer to "pursue his investigation without fear of violence," *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923, and Officer Maffia's search in this case exceeded those bounds.

While the rule as to how far a protective search of the inside of a vehicle following an investigatory stop in circumstances such as these has not been entirely fleshed out, we find substantial guidance in *United States v. Santana,* 485 F.2d 365 (2d Cir. 1973). In that case, in which one suspect remained seated in the car, Judge Friendly observed that the officer was entitled "to make a cursory inspection of the car to see whether it contained a weapon readily available to [the suspect in the car]." 485 F.2d at 369. Even if *Santana* is read broadly it does not support the search conducted here, which can hardly be called a "cursory inspection of the car." While Maffia may have been justified in inspecting the suspect's jacket, feeling for hard objects and looking into a pocket upon feeling one such hard object, he had no right, once he had satisfied himself that the object was a comb, to proceed further and empty the contents. To approve the extensive investigation made here would stretch the concept of protective search far beyond *Terry, Adams* and *Santana* and, indeed, beyond recognition.

The motion to suppress is granted. It is so ordered.