548 F.2d 1102
 Brian S. FIELDING, Petitioner-Appellant-Appellee,
v.
Eugene LeFEVRE, Superintendent of Green Haven Correctional
Facility, et al., Respondents-Appellees-Appellants.
 Nos. 462, 463, Dockets 76-2089, 76-2094.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 23, 1976.
Decided Jan. 19, 1977.
 
 Jay H. Topkis, New York City (Jack C. Auspitz, Jay L. Himes, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for petitioner-appellant-appellee.
 Janet Cunard, Asst. Dist. Atty., White Plains, N. Y. (Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N. Y., of counsel), Louis J. Lefkowitz, Atty. Gen., Samuel A Hirshowitz, First Asst. Atty. Gen., Ralph Lewis McMurry, Asst. Atty. Gen., New York City, for respondents-appellees-appellants.
 Before MANSFIELD, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Brian Fielding, the petitioner in this case, was convicted in the County Court of Westchester County, New York, of seven counts of sodomy in the second degree, N.Y.Penal L. § 130.45 (McKinney 1976), six counts of sexual abuse in the second degree, N.Y.Penal L. § 130.60 (McKinney 1976) and one count of endangering the welfare of a child, N.Y. Penal L. § 260.10 (McKinney 1976). Two consecutive indeterminate sentences of up to seven years were imposed. Upon appeal, the Appellate Division for the Second Department affirmed the conviction, but modified the sentences to run concurrently. This disposition was affirmed by the highest court of New York, the Court of Appeals. People v. Fielding, 39 N.Y.2d 607, 385 N.Y.S.2d 17, 350 N.E.2d 393 (1976). The petitioner then sought a writ of habeas corpus in the Southern District of New York, asserting a denial of rights under the Sixth and Eighth Amendments. After a somewhat unusual proceeding,[1] the district court denied the petition but granted a certificate of probable cause. We affirm the decision of the district court on the Eighth Amendment question. We decline to reach the merits of the Sixth Amendment claim, inasmuch as we hold that the petitioner has failed to exhaust available state remedies as is required by 28 U.S.C. § 2254.
 
 
 2
 This case comes to us with a somewhat confused procedural history. Petitioner was indicted in March, 1974, for sexually abusing the members of the "Pop Warner" football team which he coached. The case proceeded in normal fashion until October, 1975, when a judge from Albany County, Hon. John Clyne, was brought in to try the case. This appeal is concerned with the circumstances under which Judge Clyne was called in and his subsequent behavior.
 
 
 3
 Shortly after entering the case, Judge Clyne sought plea negotiations. He stated that in order for any plea bargain to be acceptable to him, Fielding would have to plead guilty to at least one felony, and that he intended to impose a sentence of imprisonment should defense counsel and the district attorney be able to come to an arrangement. This procedure was entirely proper under New York law. United States ex rel. Selikoff v. Com. of Corr., 524 F.2d 650 (2d Cir. 1975); People v. Selikoff, 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (1974), cert. denied, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975).
 
 
 4
 The parties are in dispute as to what subsequently happened. Mr. Vincent Lanna, trial counsel for Fielding, has submitted an affidavit in which he states unequivocally that Judge Clyne said "that the sentence might be more severe" should the defendant proceed to trial.[2] This point is disputed directly by the respondents, and implicitly by Judge Clyne, who has also supplied an affidavit in this action. Nevertheless Fielding proceeded to waive a jury and go to trial.[3] Upon overwhelming evidence, he was convicted of seven felonies and seven misdemeanors.
 
 
 5
 For some time prior to his trial, Fielding had been in intensive psychotherapy. A report from the doctor treating him formed the core of the extensive pre-sentence memorandum submitted to Judge Clyne. In it, Fielding's psychiatrist concluded that his patient had been suffering from pedophilia, and could achieve sexual satisfaction only with young boys. He went on to state that as a result of treatment, Fielding had overcome these urges, and now had a normal sexual orientation. His conclusion was that his patient, if not sent to jail, was unlikely to repeat his crimes, but that imprisonment might well drive him back into pedophilia.
 
 
 6
 In addition, Fielding underwent interviews with five other psychiatrists. They unanimously agreed that Fielding was "cured" but that further treatment was necessary, and that his condition would deteriorate if he were to be imprisoned. Some also alluded to the harsh treatment meted out to child sex offenders at the hands of other prisoners. In addition, the sentencing memorandum contained a number of character references from friends and neighbors of the defendant. Despite this barrage of recommendations for leniency, Judge Clyne gave Fielding an indeterminate sentence of up to fourteen years.
 
 
 7
 Prior to trial, defense counsel learned that Judge Clyne had been brought into the case because the administrative judge of Westchester County was the grandfather of one of the complaining witnesses.[4] When petitioner learned that Judge Clyne was aware of this, he made a recusal motion but was unsuccessful. Petitioner then began an Article 78[5] proceeding to disqualify Judge Clyne on the ground that his knowledge of the administrative judge's relation to a complaining witness would prejudice him. This application for relief was denied.[6]
 
 
 8
 After proceeding through the appellate courts of New York, Fielding began this habeas corpus proceeding. He claimed that Judge Clyne's "threat" was a violation of the Sixth Amendment, and that the sentence imposed constituted cruel and unusual punishment. The writ was denied by the district court after a "remand" to Judge Clyne, and both parties appealed.[7] We affirm the denial of the writ.
 
 
 9
 I. The Sixth Amendment Claim.
 
 
 10
 Before a state prisoner may present his claim for habeas corpus to a federal court, he is required to exhaust his state remedies, 28 U.S.C. § 2254(b). This is not a formal hurdle placed in the way of meritorious claims, but an essential element of federalism in the administration of criminal justice. The state courts must be afforded an opportunity to set their own Constitutional houses in order before the power of the federal courts is invoked. See Note, Developments in the Law Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1094 (1970). That policy is especially strong when, as here, the conduct of a state judge is sharply and directly called into question. United States ex rel. Nelson v. Zelker, 465 F.2d 1121, 1124-25 (2d Cir.), cert. denied, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). We hold that Fielding failed to present his Sixth Amendment claim to the New York courts, and thus we do not reach the merits of his contention.
 
 
 11
 The claim under the Sixth Amendment is premised entirely upon Judge Clyne's alleged threat of a more severe sentence should Fielding go to trial. If true, this would establish a per se violation of the defendant's Sixth Amendment right to a trial, and require resentencing before a different judge. See Blackledge v. Perry, 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1973); Santobello v. New York, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); United States v. Stein, 544 F.2d 96, 104 (2d Cir. 1976); Hess v. United States, 496 F.2d 936, 938 (8th Cir. 1974).
 
 
 12
 However, the affidavit which is the sole basis for this claim is couched in conclusory terms; nowhere is Judge Clyne's actual language set forth. It might well be a zealous advocate's interpretation of an offer of leniency should a guilty plea be entered, which violates no constitutional rights, Santobello v. New York, supra, 404 U.S. at 260-62, 92 S.Ct. 495; in fact, this is an accepted part of New York's criminal procedure, United States ex rel. Selikoff v. Com. of Corr., 524 F.2d 650 (2d Cir. 1975); People v. Nalo, 47 A.D.2d 613, 365 N.Y.S.2d 2 (1975). The respondents alternatively suggest that Judge Clyne was merely stating that, were Fielding to go to trial and be convicted on more than one of the fifty-two counts of the indictment, he might well receive a more severe sentence than on a plea of guilty to a single count. Were this the case, no constitutional violation would be present. On the state of the record, however, we are unable to determine the actual nature of the statements made. Thus, even if this claim were properly before us, we would remand the case for a factual hearing.
 
 
 13
 In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The requirement is not a formality of pleading; the claim must be "fairly presented" to the state courts, with "an opportunity to apply controlling legal principles" to the factual allegations made. Id. at 275, 277, 92 S.Ct. at 513. The constitutional contention made in the federal proceeding need not be identical with the one advanced to the state court, but it must be its "substantial equivalent." As for the alleged violation of the Sixth Amendment, this is simply not such a case.
 
 
 14
 The main thrust of petitioner's two state appeals was an attack on the harshness of his sentence. Since it was Judge Clyne who had imposed the term of imprisonment, he also contended that Judge Clyne should have been disqualified for bias. What is now presented as a frontal assault by the judge upon the Constitution was merely cited as one bit of evidence showing the prejudice of Judge Clyne throughout the state proceedings.[8] At no time was it advanced as part of a claim that Fielding's right to trial was chilled, or that he was sentenced vindictively for persisting in the face of that threat. Since this claim is not substantially the same as was presented to the New York courts, we will not consider it. United States ex rel. Gibbs v. Zelker, 496 F.2d 991, 993-94 (2d Cir. 1973); Mayer v.Moeykens, 494 F.2d 855, 858-59 (2d Cir.), cert. denied, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974); United States ex rel. Nelson v. Zelker, 465 F.2d 1121, 1125 (2d Cir.), cert. denied, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972).
 
 
 15
 In Article 440 of the Criminal Procedure Law, New York has set up a comprehensive scheme of post-conviction remedies. That path was open to petitioner.[9] Had he tried that route and failed, federal habeas corpus would still have been available. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Aloi v. Arnold, 413 F.Supp. 1384, 1388 (S.D.N.Y.1976). In any event, § 2254 does not allow a petitioner to elect between state and federal remedies. If there is a means by which a new federal claim can fairly be presented to the state court, it must be tried before the power of the federal courts may be invoked.[10] Thus, we uphold the denial of the writ on this ground for failure to exhaust state remedies.
 
 
 16
 II. The Eighth Amendment Claim.
 
 
 17
 The Eighth Amendment claim was fully presented to the state courts, and thus is properly before us. On the merits, we affirm Judge Metzner's denial of relief on this ground.
 
 
 18
 Petitioner has actually made two distinct Eighth Amendment claims, one challenging the propriety of imprisoning a pedophile in his condition and one directed to prison conditions in New York. We shall deal with them in turn.
 
 
 19
 Petitioner, supported by an impressive collection of psychiatric opinions, claims that he is well on the road to recovery, if not already "cured" of his pedophilia. He goes on to allege that continuing psychotherapy is vital to his maintenance of this condition, and that it will be impossible to receive such aid in jail. Other than a set of conclusory statements about the lack of adequate psychotherapy in prison, no proof of this is offered. While the psychiatric treatment offered prisoners may not be the same as petitioner is now receiving, differences of professional opinion simply do not raise constitutional issues.
 
 
 20
 Even if the state provided no psychiatric care at all for its prisoners, petitioner would not be entitled to the grant of habeas corpus. Assuming, arguendo, that there is an obligation to provide such treatment, the proper remedy is a suit under 42 U.S.C. § 1983 to compel the state to afford prisoners access to psychotherapy. Estelle v. Gamble, --- U.S. ---, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).
 
 
 21
 In arguing to this Court that his sentence is cruel and unusual because it will not rehabilitate him, Fielding misconceives both the role of the federal judiciary and the scope of the Eighth Amendment. There is no constitutional principle that prefers rehabilitation over deterrence and retribution as a goal of sentencing.[11] The desire of New York to incarcerate Fielding both as an expression of outrage at his conduct and an attempt to deter others suffers from no constitutional infirmity.
 
 
 22
 Similarly, the role of the federal judiciary in controlling the structure of New York's system of criminal justice is narrowly circumscribed. Petitioner would have us credit psychiatric opinions attacking imprisonment for pedophilia, and discredit the judgment of New York's legislature that provides for incarceration in crimes of this sort. Even though the former view of criminal justice may be more "enlightened," we are unable to see how the provisions of the Penal Law under which petitioner was sentenced run afoul of the wide discretion allowed to the states in these matters. Our role under the Eighth Amendment does not allow us to reach that far, even if we were so inclined.
 
 
 23
 In short, while conceding in the abstract the propriety of imprisonment as a punishment for second-degree sodomy, Fielding argues that his particular circumstances render it cruel and unusual. Essentially, he asks this Court to review a sentence handed down by a state court, which we are powerless to do. The fact that he has cast his argument in constitutional terms does nothing to change this. Arguments such as this are properly addressed to the state courts; in fact, the Appellate Division, in response to this, reduced the maximum term of petitioner's sentence from fourteen to seven years.[12]
 
 
 24
 His second line of attack is more serious. He asserts that, as a child sex offender, he will be particularly liable to homosexual assaults by other prisoners, and that the state will deliberately stand by while this is going on. However, his argument is based upon wholly conclusory statements. He has adduced no convincing evidence that he will, in fact, be subject to such attacks. His fears, while no doubt very real to him, do not provide a basis for relief. Far stronger evidence than has been produced is necessary before the federal courts will abandon their extreme reluctance to interfere in the administration of state prisons. Furthermore, since we do not question that conduct like this can be prevented, the proper remedy again is not release, but a suit under 42 U.S.C. § 1983. See James v. Wallace, 382 F.Supp. 1177 (M.D.Ala.1974).
 
 
 25
 Finally, Fielding argues that the possibility of imprisonment has depressed him to the point where he has become seriously suicidal. In support of this, he has testimony from several of the psychiatrists who examined him. This evidence was pointed out to the sentencing courts,[13] which considered and rejected it. As with any proffered evidence, a psychiatric conclusion like this is not binding on a court. More important, it raises no cognizable federal claim, since it is offered to prove that Judge Clyne abused his sentencing discretion. Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). We thus are unable to grant relief on this ground as well.[14]
 
 
 26
 The judgment of the district court refusing to grant the writ is affirmed.
 
 
 
 [1]
 Judge Metzner denied relief on all grounds except the claimed Sixth Amendment violation. On that, he found the record unclear. Rather than holding an evidentiary hearing, see Townsend v. Sain, 372 U.S. 293, 312-18, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), he "remanded" the case to Judge Clyne for a determination of whether the sentence was made harsher as a result of Fielding's decision to go to trial. Not surprisingly, the judge found his conduct to be blameless. An attempted appeal of this decision to the state appellate courts was unsuccessful. People v. Fielding, N.Y.L.J. p. 8, col. 2 (Sept. 8, 1976 App.Div.2d Dept.)
 By affirming Judge Metzner's decision to deny the writ, we do not mean to approve the procedure he employed. We may assume, without deciding, that there are rare cases in which a petition for habeas corpus can properly be referred to the state courts, but see Note, Developments in the Law Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1145-48 (1970). However, we find it inconceivable that the proper judge in such a case is the one who imposed the challenged sentence.
 
 
 [2]
 This affidavit was submitted in support of a proceeding brought under N.Y.C.P.L.R. Art. 78, seeking to have Judge Clyne remove himself from the case
 
 
 [3]
 If the threat was in fact made, the election to go to trial does not constitute a waiver, since the possibility would exist that a longer sentence was imposed as a result. In such a case, the sentence, but not the conviction, would have to be vacated
 
 
 [4]
 Out of an excess of caution, the administrative judge determined that no judge over whom he had jurisdiction should sit on the case. He thus requested the Appellate Division to send a judge from another county. Petitioner appears to have construed this as an attempt to prejudice his trial
 
 
 [5]
 Article 78 is New York's statutory substitute for mandamus and prohibition
 
 
 [6]
 The suggestion that Judge Clyne should have excused himself because this knowledge prejudiced him was the main argument both in this Article 78 proceeding and on appeal. The threat of a longer sentence occupied a minor place until the case found its way into the district court
 
 
 [7]
 The state has appealed from that part of Judge Metzner's order sending the case to Judge Clyne
 
 
 [8]
 As we noted above, the alleged threat was reported in an affidavit of Fielding's trial counsel, submitted in a special proceeding. Although it was presented as part of the record on appeal, the state contended that it was not properly included. Resolving this issue is unnecessary, for the argument that petitioner now makes was never presented to the state courts. The "threat" appears only as supporting evidence of Judge Clyne's bias. Thus, the sole mention of this comment to the Court of Appeals which might be construed to raise this claim occurs in the following paragraph:
 Judge Clyne's conference with the grandfather of a complaining witness should, by itself, be enough to bring about his disqualification. (S)o also, the statement before trial that defendant would be incarcerated; so also the statement that if defendant went to trial, and were convicted, he might get a more severe sentence; so also the post-trial statements to Anne Vitale. (emphasis added) (citations omitted).
 Such a glancing reference coupled to a citation is insufficient to meet the exhaustion requirement. Zicarelli v. Gray, 543 F.2d 466, 470-75 (3d Cir. 1976) (en banc). Moreover, we note that in the same section of his brief in the New York Court of Appeals, appellant stated that "(t)here may be instances where such a warning from the judge would be both fair and appropriate." This hardly gave fair notice to the state courts of the argument now advanced that Judge Clyne's comment was a per se violation of Fielding's constitutional rights.
 
 
 [9]
 Although he has not made an Article 440 motion, petitioner has been in and out of the state courts with imaginative pleas for relief under Article 78, as well as a motion for reduction of sentence
 
 
 [10]
 We reject out of hand any suggestion that the state courts are not as fully capable as we of assessing claimed denials of constitutional rights. See Stone v. Powell, 428 U.S. 465, 493, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976)
 
 
 [11]
 Perhaps the most dramatic support for this is the recent decision of the Supreme Court in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), upholding the death penalty against an Eighth Amendment challenge
 
 
 [12]
 The Eighth Amendment is not a general grant to the federal courts of power to review sentences. Rather, it allows the review of the punishment specified by statute. Thus, we can review a claim that imprisonment for sodomy is cruel and unusual, or that imprisonment of pedophiles violates the amendment, but not that a particular petitioner is deserving of mercy. Put another way, we are to review legislative choices, not abuses of judicial discretion. Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)
 
 
 [13]
 Since petitioner does not challenge his conviction itself, the greatest relief we would grant on this petition would be to vacate his sentence and remand him to the state courts for reconsideration. We note that petitioner has already had virtually this relief. The Appellate Division has almost complete discretion to reduce a sentence seen as harsh or vindictive. N.Y.C.P.L. §§ 450.30(1), 470.15(2)(c), (6)(b) (McKinney 1976). They have already reduced the sentence imposed by Judge Clyne from 14 to 7 years. Thus, petitioner asks not for a second bite of the apple, but a third
 
 
 [14]
 The grant of relief on this ground would raise a host of additional problems. Most significantly, it would allow a prisoner to bootstrap himself into release by threatening to kill himself. While we do not doubt the sincerity of this claim, we are confident that the New York authorities will attempt to prevent such an occurrence