Joseph M. ALLEN, Petitioner,

v.

Gary H. FILION, Respondent.

No. 02–CV–6079.

United States District Court,
W.D. New York.

July 6, 2004.

Joseph M. Allen, Coxsackie, NY, pro se.

Barbra A. Kavanaugh, Attorney General's Office, Buffalo, NY, for Respondent.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Petitioner, Joseph M. Allen ("Allen"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Allegany County Court following a guilty plea to one count of first degree manslaughter. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, Allen's § 2254 petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Allen was indicted by an Allegany County Grand Jury on one count of second degree murder, four counts of first degree robbery, one count of third degree arson, and one count of first degree conspiracy. The People charged that on May 21, 1998, Allen and an accomplice, Fred E. Perry, Jr. ("Perry"), went to the home of James Doan ("Doan") in the rural town of Alma, New York. Doan, who lived by himself, previously had dated Allen's mother. Ap-

parently, Allen and Perry intended to kill Doan prior to killing themselves.[1]

Perry, armed with a shotgun, and Allen, with a rifle, approached Doan's house from the woods so as not to be seen. After secreting their weapons outside the door, Perry and Allen entered Doan's house and had a conversation with him. Perry asked Doan for a glass of water, which Doan provided. Perry then stepped outside the door, retrieved and loaded his shotgun, and re-entered Doan's dining room. Perry fired into the left rear part of Doan's skull, killing him instantly.

Allen and Perry then left Doan's house carrying two of the victim's horse saddles. After a failed attempt to saddle the horses, the two perpetrators retreated to the woods to discuss their plans. Ultimately, Allen and Perry returned to scene of the crime whereupon they lashed Doan's body to a riding lawn mower and dragged the body across the road and into a barn. There, Allen and Perry relieved the victim of $614 in cash and some cigarettes.

Allen and Perry returned to Doan's house where they washed as much blood and brain matter as possible from the walls and floor. They dumped the cleaning materials in the barn along with the victim's body, which they covered with hay. The perpetrators then doused the barn with gasoline and set it afire. Since they were in a rural area, no one responded to the blaze. Allen and Perry returned to their respective homes. Allen gave his portion of the stolen money to his roommate and asked him to purchase car parts with it.

. Later in the day, after the incinerated barn and Doan's remains were discovered, Allen was questioned by police regarding his whereabouts on the previous evening. Allen was questioned a second time later in the evening of May 22, 1998, and gave a different story. Due to the inconsistencies between his two accounts, Allen was questioned a third time on May 23, 1998. Apparently, in the interim, Allen also confided to an unidentified friend that he had been involved in Doan's murder.

During this time, the police picked up Perry on a probation violation warrant and sent him to Allegany County Jail. Once there, Perry confessed his involvement in the Doan murder to a fellow inmate, Michael Lopez ("Lopez"), who then contacted the police. Lopez met with Investigator Fish of the state police on May 24, 1998, and gave a statement concerning Perry's admissions. (Lopez testified at a pre-trial hearing that he received no promises of leniency from the police in exchange for this information.)

The same day, after receiving this information from Lopez, Investigators Fish and Harris went to Allen's home and requested that he come down to the police barracks. Allen, accompanied by his mother, followed the troopers to the barracks. Once there, Investigator Fish read Allen his *Miranda* rights. Allen asked for a lawyer, whereupon Investigator Fish left the room. Immediately thereafter, Allen informed Investigator Harris that he had something to tell him and spontaneously began recounting the events of May 21, 1998. Investigator Harris transcribed Allen's oral statements, but Allen did not sign a written statement or the officer's notes.

Allen then was placed under arrest and detained at the Allegany County Jail where he, too, made admissions to an unidentified person or persons about the Doan murder which were heard by Lopez.

---

1. Because respondent did not provide the statements of the co-defendants in its appendix of exhibits, the instant recitation of facts is taken from the factual statements contained in the briefs submitted by the parties on direct appeal in state court.

Lopez gave a second written statement to Investigator Fish on May 28, 1998, with respect to additional inculpatory statements by Allen and Perry.

A hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) *("Huntley")*, was held before County Court Judge Euken on October 30, 1998, to determine the voluntariness of Allen's oral statements to the police. Lopez, the jailhouse informant, and Investigator Harris were the only witnesses at the hearing. Investigator Harris testified that when Allen arrived at the barracks on May 24, 1998, he was present when Investigator Fish read Allen his *Miranda* warnings, at which point Allen requested the services of a lawyer. Investigator Fish then left the room while Investigator Harris remained. According to Investigator Harris, Allen suddenly said, "I have something I have got to tell you," and spontaneously began recounting the events surrounding the Doan murder. *See* Transcript of *Huntley* Hearing at 42–43, Respondent's Appendix of Exhibits ("App.")[2] at 166–67. Investigator Harris indicated that he just listened to Allen and wrote down what he said. Investigator Harris testified that he did not ask Allen any questions other than "can [you] repeat what [you] said" or "could you say it louder" *Id.* According to Investigator Harris, he did not ask for additional details, such as information regarding dates or places or times. *Id.* at 45, App. at 169. Allen was not asked to give a written statement, nor was he asked to sign Investigator Harris's notes. *Id.* at 46.

Investigator Harris testified that Allen did not leave the interrogation room to go use the telephone before he started confessing to the murder. Nor did Investigator Harris offer to have a lawyer contact Allen at that time. *Id.* at 60, App. at 183. Investigator Harris conceded that Allen was not free to go, even before Allen began making inculpatory oral statements that afternoon. *Id.* at 62–63, App. at 185–86. Once Allen completed giving his oral statement, he was placed under arrest.

Judge Euken issued a written decision denying Allen's motion to suppress on November 30, 1998. The court observed that under New York law, "[o]nce an attorney has entered the proceeding, the police may not question a suspect in the absence of counsel unless there is an affirmative waiver in the presence of counsel of the defendant's right to counsel." 11/30/98 County Court Order, App. at 227 (citing *People v. Arthur*, 22 N.Y.2d 325, 329, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968)). However, the court noted, the rule in *People v. Arthur* "does not apply when the defendant makes spontaneous admissions that are not the product of police interrogation." *Id.* (citing *People v. McKie*, 25 N.Y.2d 19, 28, 302 N.Y.S.2d 534, 250 N.E.2d 36 (1969)). Furthermore, the court explained, "a spontaneous oral admission does not constitute custodial interrogation within the meaning of *Miranda v. Arizona* [.]" *Id.*

In the present case, Judge Euken found, "[t]here was neither questioning nor the functional equivalent of questioning after the defendant invoked his right to counsel." *Id.* The court noted that

> Allen blurted out his admissions in a genuinely spontaneous manner. He just let it out. He had not been arrested; he had not been asked a single question about the homicide. The record is void of any inducement, provocation, encour-

---

**2.** Respondent's Appendix of Exhibits was submitted in connection with their answer to the present habeas petition.

agement or acquiescence on the part of the State Police Investigator[.]

.      .      .      .      .

The actions of the State Police in asking Allen to talk to them and then terminating the interview when he asked for a lawyer does not amount to police interrogation. Their actions did nothing to evoke his voluntary, spontaneous admissions. . . .

*Id.* at 228 (citations omitted).

Finding that neither the Sixth Amendment right to counsel nor the Fifth Amendment right to remain silent were violated by Allen's spontaneous admissions, the court held that Allen was not subjected to a custodial interrogation. *Id.* at 229. Accordingly, the court determined that "[w]hile the handwritten document itself may not be admissible at trial, the investigator will not be precluded from testifying about the substance of the oral admissions." *Id.*

Following extensive pre-trial discovery, the People offered Allen the opportunity to plead guilty to one count of first degree manslaughter in full satisfaction of the charges in the indictment, with the court to retain discretion in sentencing. Allen accepted, and on February 9, 1999, he appeared with his attorney in Allegany County Court before Judge Euken. In a colloquy with his counsel, Allen admitted that he went to James Doan's property with Perry with the intent to cause serious physical injury to Doan by shooting him. Transcript of Plea Hearing at 9, App. at 238. Allen admitted that prior to the murder, he had requested that Perry cause serious physical injury to Doan. *Id.* The court accepted Allen's guilty plea.

Defense counsel requested that Allen be granted youthful offender status, but Judge Euken declined. The court found it a significant reflection upon Allen's credibility that Allen made "conflicting, self-serving" statements in his pre-sentencing report. The court gave Allen some credit that he was not the individual who pulled the trigger, but stated that it felt that "substantial justice" would be served by having Allen and his co-defendant be in "substantially the same boat." *See* Transcript of Sentencing Hearing at 17–19, App. at 258–60. Accordingly, Judge Euken sentenced Allen on March 26, 1999, to an indeterminate sentence of 11½ to 23 years in prison.

Represented by different counsel, Allen appealed his conviction to the Appellate Division, Fourth Department. The only issue raised in counsel's appellate brief was the harshness of Allen's sentence. The Fourth Department unanimously upheld the conviction on June 16, 2000, in a summary affirmance. *People v. Allen*, 273 A.D.2d 951, 710 N.Y.S.2d 236 (4th Dept. 2000). The New York Court of Appeals denied leave to appeal on August 14, 2000. *People v. Allen*, 95 N.Y.2d 863, 715 N.Y.S.2d 217, 738 N.E.2d 365 (2000).

Allen, proceeding *pro se*, collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. Allen alleged that the prosecutor knowingly allowed a false statement by his co-defendant, Perry, to be included in the record, and that his guilty plea had been induced by threats and promises. *See* 2/16/01 C.P.L. § 440.10 Motion, App. at 280–85. In support of this motion, Allen submitted a purported affidavit from Perry dated June 16, 2001, in which Perry stated that Allen "was wrongfully accused," and that Allen could not have known what Perry's felonious intentions were because Perry "was Mentally, and Emotional [*sic*] sick, and unstable, suffering from 'Extreme Emotional Distress,' which by being in that condition, . . . [Per-

ry] didn't even know, or was aware of, [his] Intentions." *See* 6/16/01 Affidavit of Fred Perry, App. at 284.

Judge Euken issued a written decision and order on March 9, 2001, denying Allen's motion. The court noted that in order to obtain a *vacatur* based upon false evidence, the evidence must have been used at trial. *See* 3/8/01 County Court Order, App. at 289–91 (citing C.P.L. § 440.10(1)(c)).[3] Here, the court found there was no trial since Allen was convicted following a guilty plea. The court further observed that recantations by a codefendant are "extremely unreliable." *Id.* at 290.

As to Allen's claim that the prosecutor used Allen's young age to obtain a plea agreement, the court found that there were no facts to support this allegation. *Id.* The court also determined that Allen failed to allege any factual basis for his claim of duress. Accordingly, the court denied the motion without a hearing.

3. C.P.L. § 440.10(1)(c) allows *vacatur* of a judgment on the ground that "(c) [m]aterial evidence adduced at trial resulting in the judgment was false and was, prior to the entry of the judgment, known by the prosecutor or by the court to be false[.]"

4. In his papers accompanying the *coram nobis* application, Allen listed numerous bases on which to find that his appellate counsel provided ineffective representation, but he did not mention his trial counsel's performance at all. Respondent alleges that Allen "has procedurally defaulted in failing to present his claims regarding effectiveness of counsel to the state courts before seeking habeas corpus relief." Respondent's Memorandum of Law ("Resp't Mem.") (Docket # 6) at 4. Respondent states that Allen did not claim that he was denied the effective assistance of trial counsel in his C.P.L. § 440.10 motion or on direct appeal. Having failed to raise the issue in his initial C.P.L. § 440.10 motion, respondent asserts, Allen is foreclosed from raising it in future motions to vacate. *Id.* at 4 n. 1

Prior to seeking leave to appeal that decision to the Appellate Division, Allen filed a petition for a writ of habeas corpus in this Court on March 21, 2001. Respondent answered, raising the failure to exhaust state remedies based upon Allen's failure to appeal the denial of the C.P.L. § 440.10 decision to the Appellate Division, the highest court from which a decision could be obtained in regards to that matter. Allen subsequently requested, and was granted, permission to withdraw his petition in order to return to state court to exhaust his state remedies. *See Allen v. Filion,* No. 01–CV–0217, 2002 WL 1858710 (W.D.N.Y. Mar. 23, 2001). The Appellate Division subsequently denied leave to appeal the denial of the C.P.L. § 440.10 motion.

Allen filed an application for a writ of error *coram nobis* alleging ineffective assistance of appellate counsel.[4] The Appellate Division denied *coram nobis* relief in a summary order entered February 1, 2002.

Allen filed the instant habeas petition on February 11, 2002.

(citing C.P.L. § 440.10(2)(c), (3)(c)). The Court has reviewed Allen's habeas petition and the accompanying memorandum of law and finds that Allen's reference to "trial counsel" was inadvertent. In his habeas petition, when asked to briefly state facts supporting his claims, Allen mentions only omissions by appellate counsel. Furthermore, Allen's memorandum of law contains three distinct points, the first one being that appellate counsel was ineffective. No reference is made to trial counsel's inadequacy in Allen's memorandum of law in support of his habeas petition. For these reasons, the Court concludes that Allen is not raising an ineffective assistance of trial counsel claim on habeas review. Respondent does not raise the failure to exhaust with regard to Allen's remaining claims, and the Court determines that they have been fully exhausted, 28 U.S.C. § 2254(b); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995), and are properly before it on habeas review.

## DISCUSSION

### I. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### II. Merits of the Petition

#### A. Ineffective assistance of appellate counsel

■ In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (*"Strickland"*), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694. Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (citing, *e.g.*, *Claudio v. Scully*, 982 F.2d.798, 803 (2d Cir.1992)). Appellate counsel need not present every non-frivolous argument that could be made on petitioner's behalf. *Mayo*, 13 F.3d at 533; *see also Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy. *Mayo*, 13 F.3d at 533; *see also Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy[.]"). However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker. *Mayo*, 13 F.3d at 533.

Allen points to a letter from his appellate attorney dated December 6, 1999, informing Allen that counsel would be raising one argument on appeal—namely, that Allen's sentence was harsh and excessive. *See* App. at 306. Counsel indicated that the only other argument which he would consider making was whether the county court erred in finding that Allen's statements to police were admissible. Counsel explained that were he to make such an argument and succeed, the judgment of conviction would be reversed. *Id.* Although the statements would be suppressed, the People still would have the right to prove the original charge of second degree murder against Allen using other evidence. Counsel stated, "I am not clear as to whether or not you want to take the chance of having your reduced plea vacated. That decision is up to you." *Id.* Counsel asked Allen to let him know as soon as possible whether he wished to include the admissibility issue in the appellate brief.

There are no copies of any correspondence from Allen to his appellate counsel contained in respondent's appendix, and Allen has not included any in connection with his habeas petition. Allen implies, however, that he told counsel that he wanted to include the admissibility issue, notwithstanding the possible risks: "However, the appellate attorney did not even file [the issue] in the brief after petitioner *wanted him to present the issue* which would of [*sic* ] won a reversal in the appellate attorney's own words." Petitioner's Memorandum (Docket # 8) at Point I, first paragraph (emphasis supplied). Nevertheless, the record is devoid of any evidence that he actually instructed his appellate attorney to present the issue.

■ A federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state ... claim fell outside the wide range of professionally competent assistance." *Mayo v. Henderson,* 13 F.3d at 533 (quotations omitted). After reviewing the relevant New York case law, the Court concludes that any such argument likely would have proved fruitless on appeal since the trial court appears to have properly applied the relevant state precedent concerning the admissibility of voluntary statements following the invocation of the right to counsel.[5] The New York Court of Appeals has noted that

[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present (*Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 [ (1966) ]; *see Michigan v. Mosley,* 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 46 L.Ed.2d 313 [ (1975) ]; *see, also, concurring opn.* (White, J.)) 423 U.S. at 109–110, 96 S.Ct. 321, 46 L.Ed.2d 313.

Once an attorney has been requested, interrogation must cease, but this rule does not render inadmissible all statements made after a request for counsel. The defendant may make a spontaneous admission or simply change his mind

---

5. Moreover, there has been no error under federal constitutional law. Upon an accused's indication that he wishes to stand on his rights, the police are bound to "scrupulously honor" that assertion. *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). These protections only apply, however, to statements elicited by law enforcement officers through interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (barring the use of "statements ... stemming from custodial interrogation of the defendant" where warnings not given prior to interrogation); *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (spontaneous statements, which are not the product of custodial interrogation, are not subject to suppression). Thus, under federal law, the prosecution is not prohibited from introducing a defendant's spontaneous post-arrest statements.

Furthermore, under federal law, when an accused who has been advised of his *Miranda* rights initially declines to answer questions or requests an attorney but later initiates a conversation with law enforcement officers, even statements made in response to subsequent interrogation are admissible. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (officers may interrogate arrestee who has asked for a lawyer, so long as the arrestee "himself initiates further communication, exchanges or conversations with the police"). If, however, the accused invokes his right to counsel, "courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984); *see also Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. 1880; *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

and voluntarily make a statement. The *Miranda* decision was designed to prevent further interrogation, and thus a statement is admissible if volunteered even if an attorney is on the way.

*People v. Buxton,* 44 N.Y.2d 33, 37, 403 N.Y.S.2d 487, 374 N.E.2d 384 (1978) (some citations omitted); *accord, e.g., People v. Davis,* 75 N.Y.2d 517, 523, 554 N.Y.S.2d 460, 553 N.E.2d 1008 (1990) ("[T]here is no legal requirement that an attorney be present before the witness changes an earlier decision to remain silent and talks to the authorities.") (relying on *Buxton, supra); see also People v. Kaye,* 25 N.Y.2d 139, 142, 303 N.Y.S.2d 41, 250 N.E.2d 329 (1969) ("The record amply supports the factual findings of the courts below that defendant volunteered the confession in the police car without interrogation after having been advised of his constitutional rights *by his attorney* and the detectives. The record indicates that defendant was rational and coherent at the time he volunteered this confession.") (emphasis supplied).

On federal habeas review, a state court's factual findings are entitled to a presumption of correctness which the petitioner must rebut by a showing of clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Allen, however, has not met this burden. Moreover, the Court has reviewed the transcript of the *Huntley* hearing, and even were the Court to perform a *de novo* review, it would find no clear error in the trial court's determinations of fact.

The evidence at the *Huntley* hearing showed that Allen spontaneously began making admissions to Investigator Harris after Investigator Fish left the room. The state court observed that Allen's admissions were "a form of stream of consciousness," and that the errors contained in the admissions "only corroborate[d] the testimony and role of Inv. [*sic* ] Harris who

acted as a scrivener and not an investigator." *See* App. at 228. There was no evidence at the hearing that Investigator Harris "interrogated" Allen while Allen was giving his narrative version of the events of May 21, 1998.

The course Allen claims he wanted his appellate counsel to follow was certainly not without substantial risks. Were a reversal obtained and Allen's inculpatory statements precluded, the People still would have been entitled to prove the original charges of conspiracy and second degree murder based upon different evidence. At the bail hearing, the prosecutor represented that there was "a virtual mountain of evidence, both forensic, physical and documentary to bring to bear in this case." *See* Transcript of Bail Hearing at 9, App. at 104. In addition, the People would have called Lopez, the informant, who would have testified that Perry made statements inculpating Allen in the murder. Also, there was a statement by Lopez to Investigator Fish summarizing admissions that Allen himself allegedly made to Lopez. There were, apparently, other individuals who also had heard Allen inculpate himself. Thus, Investigator Harris's testimony as to Allen's spontaneous admissions was not the sole evidence on which the state could build a compelling case against Allen.

The Court concludes that appellate counsel's omission of the challenged argument was not an example of incompetent lawyering. The Supreme Court has explained that the second issue of prejudice need not be addressed if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing

on one."). Even so, given the fact that the argument Allen identifies as omitted on appeal is without merit, he is unable to prove prejudice as well. Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a 'reasonable probability' that [his] claim would have been successful . . . .") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992)). For these reasons, Allen cannot fulfill the requisite criteria for obtaining habeas relief based upon his appellate counsel's assistance.

**B. Harsh and excessive sentence**

Allen argues that his sentence did not fall within the statutory range because he was eligible for youthful offender status. Allen points to the fact that the Pre–Sentencing Report ("PSR") completed by the probation department indicated that he was available for youthful offender status, but the judge specifically declined to grant it. Allen also notes that the PSR did not include a recommendation that Allen be incarcerated in state prison.

■ A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736,

741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir.1996) (unpublished opinion).

■ In this case, New York Penal Law § 70.02 establishes sentencing guidelines for those found guilty of first degree manslaughter, the class B felony to which Allen pled guilty in satisfaction of an indictment containing counts of second degree murder, robbery, arson, and conspiracy. Allen's sentence of 11½ to 23 years was well within the statutory limit. *See* New York Penal Law § 70.02(3)(a) ("For a class B felony, the term must be at least five years and must not exceed twenty-five years[.]"). Accordingly, Allen's sentencing claim is not cognizable on habeas review.

**C. Involuntariness of guilty plea**

Allen argues that his "plea was, not knowing since petitioner['s] age of 16 and lack of history with the court system did not allow petitioner the knowledge to [*sic*] the defenses and options." Petitioner's Memorandum of Law (Docket # 8) at Point III, second paragraph.[6] In rejecting this claim, brought in support of Allen's C.P.L. § 440.10 motion, the state court held that there were no facts to support

---

6. Allen further argues that there were "alot of things which could point to the fact that the petitioner was not guilty, (like the statements from the co defendant taking the responsibility for the crime)." Allen apparently is referring to Perry's statement which recited that he was solely responsible for Doan's murder

and that Allen was "illegally was accused[ ] and sentenced[.]" *See* App. at 284. This statement, the veracity of which is seriously open to question, was not made until after both Perry and Allen had been sentenced. As such, it could not have had any bearing on Allen's decision to forego trial.

the allegation that the prosecutor used Allen's age to obtain a plea agreement. App. at 290. The court explained, "The pre-sentence investigation lists defendant's age as 17 with a date of birth of 9/6/98. The indictment lists the crime date of 5/21/98." *Id.* Thus, Allen was 16–years–old at the time of the crime, and 17–years–old at the time he pled guilty.

■ The Due Process Clause of the Fourteenth Amendment requires that a plea of guilty be knowingly and voluntarily entered. *Boykin v. Alabama*, 395 U.S. 238, 242–43 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *accord, e.g., Innes v. Dalsheim*, 864 F.2d 974, 977 (2d Cir.1988). "A plea is made knowing[ly] when made 'with [an] understanding of the nature of the charge and the consequences of the plea.'" *Sims v. Ricks*, 2002 WL 1808207, at *3 (S.D.N.Y. Aug.6, 2002) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). "'[T]he standard for determining the validity of guilty pleas [is] whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.'" *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992). In this regard, the trial court judge is charged with making a searching inquiry into the circumstances surrounding the plea in order to determine whether the defendant does actually understand the significance and consequences of a particular decision. *See Boykin*, 395 U.S. at 243–44, 89 S.Ct. 1709; *Godinez v. Moran*, 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

■ Simply because Allen was a juvenile does not, in and of itself, render him incapable of making a knowing and voluntary waiver of a constitutional right. An accused's age is but one factor to be considered in determining the voluntariness of a guilty plea. *See Irizarry v. United States* 508 F.2d 960, 964 n. 3 (2d Cir.1974) (In determining whether defendant tendering plea of guilty understands nature of charge, factors to be considered include complexity of charge, defendant's age, record, intelligence, education, ability to comprehend what was being said to him, and whether defendant was represented by counsel.). The elements of the manslaughter charge were not terribly complex, and there is no allegation that Allen was of below-average intelligence or did not understand what transpired at the various hearings before the court. Furthermore, Allen was ably represented by an experienced trial attorney. Lastly, in his pre-sentencing statement to the court, Allen spoke articulately about how he regretted the events of May 21, 1998.

At the plea allocution, the trial court questioned Allen thoroughly about the consequences of pleading guilty. Allen agreed that he had "plenty of time" to talk to his lawyer and discuss his options. Allen confirmed that his attorney was representing him properly and spending time with him to discuss the plea agreement. The trial judge ascertained that Allen understood that he was giving up the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. The judge explained that Allen's guilty plea had the same legal effect as if a jury convicted him. Allen agreed that he understood the duration of the maximum and minimum sentences he could receive once he pled guilty. The judge explained that he did not contemplate sentencing Allen as a youthful offender. Allen indicated that no promises had been made to him, nor had any threats been issued to him in order to induce him to plead guilty. Lastly, Allen agreed that he was entering into the plea agreement so

as to avoid the possibility of being convicted on other, more serious offenses contained in the indictment, such as murder. *See* Transcript of Plea Hearing at 3–8, App. at 232–37.

Upon the record before it, the Court can find no evidence which would cause it to conclude that Allen's guilty plea was not knowingly or voluntarily entered. Allen's youth and lack of a criminal record, without more, are not enough to invalidate his relinquishment of his rights by pleading guilty.

## CONCLUSION

For the reasons stated above, Joseph Allen's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Allen has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

**IT IS SO ORDERED**